PUERTO RICO CONSERVATION
FOUNDATION, et al.,
Plaintiffs,

v.

Thomas D. LARSON, etc.,
et al., Defendants.

Civ. No. 91–2378 GG.

United States District Court,
D. Puerto Rico.

April 13, 1992.

Armando Cardona, Rio Piedras, P.R., Steven S. Rosenthal, Ellen E. Deason, Linda F. Calhoun, Morrison & Foerster, Washington, D.C., Nathaniel S.W. Lawrence, Natural Resources Defense Council, San Francisco, Cal., for plaintiffs.

Silvia Sepulveda–Hambor, U.S. Dept. of Justice, General Litigation Section, Environment and Natural Resources Div., Washington, D.C., Ivonne Gonzales Morales, Old San Juan, P.R., Maria–Hortensia Rios, Asst. U.S. Atty., Dist. of Puerto Rico, Hato Rey, P.R., John Ebersole, U.S. Dept. of Agriculture, Office of Gen. Counsel, Atlanta, Ga., Irwin Schroeder, Regional Counsel, Federal Highway Admin. Albany, N.Y., Julia L. Perry, Regional Counsel, Eastern Federal Lands Highway Div., Federal Highway Admin., Sterling, Va., Frank D. Inserni, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

Pending before this court are motions for summary judgment from both parties pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. INTRODUCTION [1]

Plaintiffs are various environmental organizations that challenge the decision by the Federal Highway Administration and the U.S. Forest Service to rebuild a portion of Highway PR 191 ("Highway 191")—which runs through the "El Yunque" rainforest without preparing an Environmental Impact Statement ("EIS"). On the basis of an Environmental Assessment ("EA") dating back to 1982, defendants determined that an EIS was not needed before deciding whether to reopen the road. Defendants issued a Finding of no Significant Impact (FONSI) to proceed with the construction project.

On January 30, 1992, this court issued a temporary restraining order ("TRO"), to enjoin defendants from initiating construction on Highway 191. On February 13, 1992, the court held a hearing where we heard argument on various motions, including plaintiffs' motion for a preliminary injunction. At this hearing, we found that "good cause" existed under Rule 65(b) of the Federal Rules of Civil Procedure to extend the TRO, and extended the TRO for ten (10) additional days. On February 26, 1992, before the TRO expired, we issued a preliminary injunction enjoining and restraining defendants, their agents, employees, contractors and/or subcontractors from "issuing a Notice to Proceed and commencing construction or engaging in any activities or actions relating in any way to Commonwealth Route PR 191". On March 27, 1992, we issued a clarification of the geographical area within the scope of our February 26 preliminary injunction.

The magistrate issued a Report and Recommendation on February 6, 1992, with the recommendation that Summary Judgment be entered for the plaintiffs. Defendants challenge the magistrate's ultimate recommendation and his supporting analysis. Plaintiffs have filed a response to defendants' opposition to the magistrate's report and the case is now ready for disposition.

## II. STANDARD OF REVIEW UNDER *NEPA*

■ The fundamental issue here is whether defendants, in deciding to proceed with the project of reconstructing Highway 191, complied with the procedural requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* Defendants assert that an EIS is required under NEPA only for "major federal agency actions", which have a reasonable potential to significantly affect the quality of the environment, 42 U.S.C. § 4332(2)(C). They further assert that reconstruction of Highway 191 will not have a significant impact on the environment, and consequently is not within NEPA's scope. Plaintiffs, however, claim that the construction work needed to reopen Highway 191 will have a very significant impact on the environment, and that an EIS is thus essential before the agency proceeds with the project.[2]

■ In our Opinion and Order of February 26, 1992, we concluded that "... the proposal to rebuild PR 191 is a 'major federal action' under NEPA and CEQ", and we now reaffirm our earlier analysis. This contract falls precisely within the definition of a "major federal action" for which NEPA's stringent requirements demand an EIS, if significant environmental effects are likely to occur. 42 U.S.C. § 4332(2)(c) (1977). Council on Environmental Quality ("CEQ") regulations define "action" as "new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies ..." 40 C.F.R. § 1508.18 (1991). *See also Andrus v. Sierra Club,* 442 U.S. 347, 363 n. 21, 99 S.Ct. 2335, 2343 n. 21, 60 L.Ed.2d 943 (1979) (major federal actions include "expansion or revision of ongoing programs").

---

1. In this *Opinion and Order* we briefly summarize the facts of this case. For a more extensive discussion of the factual background in this controversy, see our *Opinion and Order* of February 26, 1992.

2. NEPA requires the preparation of an EIS before a government agency decides upon any "major federal action ... which significantly affect[s] the quality of human environment." 42 U.S.C. § 4332(2)(C). *See also, Sierra Club v. Marsh,* 769 F.2d 868, 870 (1st Cir.1985).

Defendants contend that the magistrate applied a strict "reasonableness standard of review", and that the use of such a standard of review is erroneous. They assert that the "arbitrary and capricious" standard is the proper judicial standard of review of an agency determination under NEPA. Defendants assert that the Supreme Court in *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989), ("hereinafter *Marsh* "), definitively resolved the issue of the appropriate standard of review under NEPA, by adopting the "arbitrary and capricious" the standard of review from the Administrative Procedure Act ("APA"). Our view of this issue is that the *Marsh* Court did not expressly resolve the issue of whether a "reasonableness" or an "arbitrary and capricious" standard of judicial review is more appropriate when a court reviews an agency's decision to waive an EIS altogether. *Marsh, supra* at 376, 109 S.Ct. at 1860.

We are in accord with plaintiffs that it is irrelevant to determine under which standard of review the magistrate reached his conclusions, because under either standard, the role of the court is to decide the potential environmental impacts of a proposed project.

Our determination of this issue is that under either the "reasonableness" or the "arbitrary and capricious" standard of judicial review; plaintiffs have clearly demonstrated that defendants' failure to carefully evaluate the potential impact of the reconstruction of Highway 191, violates the strict requirements set forth by NEPA, which governs this issue. *See Sierra Club v. Marsh*, 769 F.2d 868, 870 (1st Cir.1985) *quoting Quiñonez–López v. Coco Lagoon Development Corp.*, 733 F.2d 1, 2 (1st Cir. 1984).

## III. ENVIRONMENTAL IMPACT STATEMENT

In his Report and Recommendation, the magistrate assayed the proper role of a court reviewing an agency's decision to forgo preparation of an EIS. If an EIS has been prepared by the appropriate agencies, it would not be within our judicial authority to contest their scientific findings and to decide the ultimate issue of whether the road should remain closed or whether reconstruction should commence as scheduled. We read the magistrate's recommendation to properly acknowledge the participating agencies' expertise in assessing the environmental impact of this project. Notwithstanding this, our role is to safeguard the procedural process, to assure that the agency, in conducting the evaluation required by NEPA, properly assessed the potential effects of a proposed action.

We must ensure that the directives ordained by NEPA has been carried out, and that all relevant potential effects of the proposed construction at Highway 191 have been thoroughly considered by the officials responsible for the decision to proceed with the project. It is also our duty to ensure that those who challenge an agency's decision not to prepare an EIS, demonstrate that there is a substantial possibility that this project will "significantly affect" the environment.

If we were to accept defendants' contention that our scope of review is limited solely to the record compiled by the agency, and that we are compelled to defer to all conclusions reached by such agency, we would be renouncing the statutory power of review vested in us and shirking our duty of oversight. Especially in cases like this, where the chief allegation plaintiffs raise is the inadequacy of the record itself, we cannot and will not become "merely the judicial echo" of a decision reached at the administrative level. *See Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951); and *Valley Citizens for a Safe Environment v. Aldridge*, 886 F.2d 458 (1st Cir.1989). (Although judicial review of an agency decision often centers on the initial administrative record, it is sometimes necessary and appropriate for the reviewing court to go beyond the administrative record when the adequacy and the completeness of the record itself is being challenged.)

The magistrate did not direct the agency to reassess the need for the road, as defendants claim; he simply recommended that an EIS be prepared to "rigorously balance environmental considerations against each other and against economic and social considerations." [3] Defendants' lengthy discussion admonishing the magistrate for questioning the need to rebuild the road is impertinent and beside the point.

Equally irrelevant is defendants' protracted argument that the magistrate's recommendation is "based on factual conclusions, or mixed conclusions of fact and law, which have no support in, and are inconsistent with, the available facts". Defendants further aver that these errors are the result of the magistrate's effort to substitute his personal opinion that Highway 191 should not be reopened, for the facts contained in the administrative record. Defendants then list what they denote as the magistrate's factual findings, declaring that these findings should not be relied upon by us when reaching our final decision.

We will not address this lengthy recitation, because, as explained above, it is not our role to determine whether the road should be reopened or whether reconstruction should commence; our proper role is to determine whether the appropriate agencies thoroughly examined the environmental effects of the proposed project. The findings asserted to be factual errors by defendants, are in reality the magistrate's findings as to the heightened scrutiny of at the project's potential environmental effects, that defendants are required to make under NEPA.

Based on the evidence, we find that this project is a major federal action within the scope of NEPA, and that the appropriate federal agencies failed to give the proper level of scrutiny to its potential environmental impacts as required by NEPA.

## IV. STATUTE OF LIMITATIONS AND LACHES

Defendants argue that the magistrate erred in finding that plaintiffs' action is not time barred, since plaintiffs are now challenging an EA issued in 1982, as part of to the agency's decision to proceed with reconstruction of Highway 191. The administrative record shows and we so find, that this earlier project was never concluded and that defendants took bids for a new construction project in 1991. Defendants now claim that the current bids are for the last stage of the same project and therefore, are not currently subject to challenge.

Defendants inaccurately seek to characterize plaintiffs' actions as a challenge to the EA prepared in 1982 for the initial reconstruction project. We agree with plaintiffs that the legality of the contract awarded in 1983 is not at issue here.

In 1991, defendants decided to proceed with a project to reconstruct Highway 191 and awarded a $3.6 million contract for the same. This decision followed the Federal Highway's Administration's ("FHWA") recommendation in their "Briefing Materials", prepared in October, 1991. The decision to proceed with this project was announced by the FHWA on October 29, 1991. The Supreme Court in *Crown Coat Front Co. v. United States*, 386 U.S. 503, 511, 87 S.Ct. 1177, 1181, 18 L.Ed.2d 256 (1967), established that a cause of action against an agency accrues when administrative proceedings are complete. We find that the complaint plaintiffs filed on November 4, 1991, was timely. Plaintiffs filed within days of the final agency action to proceed with the project, and we find that the statute of limitations did not begin to run on the project until October 29, 1991. We perceive that defendants have tried to circumvent NEPA by the subtle mechanism of initiating this project in 1991, while claiming it is the same project that they awarded a reconstruction contract in 1983 without an EIS.

Defendants also claim that this action is barred by laches because plaintiffs failed to timely challenge the EA prepared in 1982. Defendants allege that they relied on the absence of such challenge, and that their interests would be impaired if plaintiffs'

---

**3.** Magistrate's Report and Recommendation, p.   3, n. 5.

belated challenge is allowed now. Plaintiffs dispute this claim with two principal arguments: (1) that several of the environmental organizations who are plaintiffs in this action were created or organized many years after defendants' 1982 administrative action, or else, were not participants in the administrative decision-making process involving El Yunque in 1982; and (2) that the nature and scope of the project which was subject to the initial EA determination back in 1982, is very different from the new project proposed in 1991.

■ We are convinced by the record, that the circumstances surrounding this project have changed considerably since the 1982 EA was prepared, and that the 1991 project is a different project than the 1982 one, (*i.e.*, Hurricane Hugo caused considerable damage to El Yunque in 1989, including the destruction of a gabion wall installed under 1982 Contract; landslides have damaged portions of the highway which were undamaged in 1982; and defendants acknowledge that costs of the contract have noticeably increased due to the need to redesign the original reconstruction plans). Furthermore, under any circumstances, laches is not a favored defense in environmental litigation involving NEPA. *See Concerned Citizens On I–190 v. Secretary of Transportation*, 641 F.2d 1, 7–8 (1st Cir.1981); *citing Jones v. Lynn*, 477 F.2d 885, 892 (1st Cir.1973).

As to the defendants' claim of laches, we agree with the magistrate that:

> The passage of time weighs as well against defendants' assessment of the actual conditions, the accuracy of compiled information back then, and deprives same from new developments and technology as well as precludes a new vision of public awareness as to the intrinsic values and unfortunate consequences of poor environmental planning and management.[4]

Defendants' averments that plaintiffs' action has delayed the process, and that this delay has caused them harm is untenable. The 1991 project is different from the 1982 project, and since plaintiffs filed

suit within one week of the agency's decision on October 29, 1991, to proceed with this project, laches is simply inapplicable.

## V. SUMMARY JUDGMENT

■ In determining whether summary judgment is appropriate, a court must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633–34 (1st Cir.1990); *Amsden v. Moran*, 904 F.2d 748 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex, supra*, 477 U.S. at 324, 106 S.Ct. at 2553; *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989).

■ *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) establishes that the party moving for summary judgment has the initial burden of showing "the absence of a genuine issue concerning any material fact." *Id.* at 159, 90 S.Ct. at 1609. See generally, Louisell, Hazard & Tait, *Cases and Materials on Pleading and Procedure: State and Federal* 170 (6th ed. 1989) ("[As] the Court stated in *Celotex*, the nonmoving party does not necessarily have to produce evidence in a form that would be admissible at trial. And, as the *Adickes* Court said, the nonmoving party does not have to adduce evidence at all until the moving party satisfies its initial burden of showing the ab-

---

**4.** Magistrate's Report and Recommendation,  p. 8.

sence of a genuine issue of fact"). If the movant shows that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the non-movant to establish the existence of a genuine material issue. *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. at 2553. An adverse party may not rest upon mere allegations, but must instead reply setting forth specific facts showing that there is a genuine issue for trial. *Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356. *Nicholas Acoustics & Specialty Co. v. H. & M. Construction Co.,* 695 F.2d 839, 844 (5th Cir.1983).

■■■■■ For the purpose of deciding the two motions for summary judgment, we examine the facts in the light most favorable to the nonmoving parties. *Celotex, supra,* 477 U.S. at 324–325, 106 S.Ct. at 2553; *Santiago Hodge, supra,* 909 F.2d at 633–634; *Roy v. Augusta,* 712 F.2d 1517 (1st Cir.1983). We also make a *de novo* review of the objections raised by defendants to the Magistrate's Report and Recommendation. This Report presents us with a supportive analysis to decide whether to dispose of this case by summary judgment.

Discussion

Defendants characterize the Highway 191 reconstruction project as a project that has "not changed from the project as described in 1982". All their arguments essentially boil down to one, that this reconstruction project is a continuation of the project begun in 1982. They aver that in the reevaluation of the 1982 FONSI prepared in 1991; they found no subsequent "new circumstances" or project changes that would significantly affect the environment.

■■■ The portion of the highway at issue was closed to the public since 1970. The record shows that a completely new roadbed is needed at the sites of two substantial landslides, and requires major repairs in sixteen other landslide areas. Furthermore, abundant vegetation in many places has reclaimed the road and must be destroyed in resurfacing the length of the road.

In reviewing the entire record, including the administrative record, we again find that the reconstruction project proposed in 1991 bears little resemblance to the project defendants executed in 1982. The fact that the proposed project in 1991 covers a portion of the road that was reconstructed in 1982, does not mean that the 1991 project is merely a continuation of the same project started a decade earlier.

We have previously found that the project to reconstruct Highway 191, is a "major federal action ... significantly affecting the quality of the human environment" under NEPA, 42 U.S.C. § 4332(2)(C). Even assuming arguendo that the new project is a continuation of the 1982 reconstruction project; we cannot "accept the [EA] [prepared in 1982] as a substitute for an EIS, despite the time, effort, and analysis that went into [its] production, because an EA and an EIS serve very different purposes." *Sierra Club v. Marsh,* 769 F.2d 868, 875 (1st Cir.1985).[5]

The scope of the current project is drastically different from the 1982 project and greater knowledge has accumulated on the true environmental impacts of the project. The Supreme Court in *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) has noted that "the CEQ regulations, which we have held are entitled to substantial deference, impose a duty on all federal agencies to prepare supplements to either draft or final EIS's if there "are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Id.* at 372, 109 S.Ct. at 1858. The FHWA regulations impose analogous requirements for proposed actions.[6]

---

**5.** CEQ regulations state, "Agencies should avoid preparing lengthy EA's except in unusual cases.... *[I]n most cases, however, a lengthy EA indicates that an EIS is needed.* 46 Fed.Reg. at 18037 (emphasis added)." *quoted in Sierra*

*Club v. Marsh,* 769 F.2d 868, 874. The EA in the instant case, prepared in 1982, is 45 pages long.

**6.** The pertinent FHWA regulations provide:

Plaintiffs contend that new research has been conducted since 1982, and that more information is currently available on the environmental impact of the project. They proffer numerous studies researching environmental conditions in El Yunque, which were simply unavailable in 1982. We find that there exist both new circumstances and new information that pertain to the project and its environmental effects, and that there have been numerous changes to the project proposed in 1982, which would have significant environment impacts not considered in the original EA. It would be absurd to claim as defendants do, that this new information obtained in the last ten years, is irrelevant to the decision to proceed with this project, particularly in view of the substantial changes that have occurred in El Yunque, during the past ten years.

Applying the standard set forth in *Celotex, supra,* and after an extensive review of the evidentiary record, according the non-moving party the indulgence required as to the respective motions for summary judgment, we find that summary judgment should be entered in favor of plaintiffs, and that this matter should be to remanded to the concerned agencies for the preparation of an Environmental Impact Statement. We also find that defendants' motion for summary judgment must be dismissed.

## VI. INJUNCTIVE RELIEF

Defendants allege that the Magistrate's Report and Recommendation does not provide a basis for the injunctive relief recommended therein. In our Order of February 26, 1992, we discussed extensively the standards for granting injunctive relief as set forth by the our Circuit, and concluded that plaintiffs satisfied all the requirements.

Rule 65 of the Federal Rules of Civil Procedure sets out the rule for granting injunctive relief in the form of temporary restraining orders, preliminary and permanent injunctions. Specifically, Fed.R.Civ. Pro. 65(d) states the guidelines under which any of the available forms of injunctive relief can be granted.[7] The Supreme Court in *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546, n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987), explained that "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show the likelihood of success rather than the actual success."

The *Amoco* court, *supra* 480 U.S. at 542, 107 S.Ct. at 1402, citing *Weinberger v. Romero Barceló,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), set out the main requirements for granting injunctive relief: a showing of irreparable injury and inadequacy of legal remedies. "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* 480 U.S. at 542, 107 S.Ct. at 1402. In applying these principles, as well as the above mentioned First Circuit standards, we granted plaintiffs a preliminary injunction on February 26, 1992, pending a resolution of this case on the merits.

(a) A draft EIS, final EIS, or supplemental EIS may be supplemented at any time. An EIS shall be supplemented whenever the Administration determines that:
(1) Changes to the proposed action would result in significant environmental impacts that were not evaluated in the EIS; or
(2) New information or circumstances relevant to environmental concerns and bearings on the proposed action or its impacts would result in significant environmental impacts not evaluated in the EIS. 23 C.F.R. § 771.130(a).

7. Rule 65(d) reads as follows:

Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

The Supreme Court stated in *Amoco, supra:* "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Id.* at 545, 107 S.Ct. at 1404.

We find that plaintiffs have fully established that if a permanent injunction is not granted, they are likely to suffer irreparable harm within the guidelines set forth by *Amoco, supra.* We also conclude that plaintiffs have shown that there is a higher risk involved in allowing this project to proceed than in delaying such project. The record shows that there is a substantial possibility that the proposed action would adversely affect the environment in a significant way. There is a tangible possibility that the likelihood of landslides and erosion will increase as a result of the road construction, causing destruction of habitat for rare and endangered plants and animal species; a safety and maintenance problem for the area; and detriment to the quality of El Yunque's waters. These altered conditions could render inhospitable potential breeding grounds, considered crucial for the survival of the endangered species of the Puerto Rican Parrot, and could adversely affect the native coqui and other rare and endangered plant species. We also conclude that scientific research projects and the delicate ecosystem, of an area as biological complex as the El Yunque rainforest could be disrupted by the influx of humans and the introduction of extraneous plants and feral animals associated with the road construction and the reopening of the highway. Furthermore, we also find that defendants have failed to effectively plaintiffs' fundamental contentions that this project will have a significant impact on the environment. In fact, there is considerable evidence in the record suggesting that the agencies never considered crucial environmental factors, or virtually ignored evidence that the proposed project would likely have adverse environmental effects. (*i.e.,* the FHWA summarily rejected a study conducted for the Commonwealth of Puerto Rico by the engineering consulting firm of Dames & Moore, which concluded that the restoration of Highway 191 may trigger landslides.)

Defendants' meager claim that the public interest will be adversely affected by delay, is unpersuasive, as this road has been closed for the past twenty-two years, and any delay incurred during the preparation of an EIS, would be minimal compared to the long period of time, which has already passed. The consequences of proceeding with this project without a proper evaluation of potential impacts to the environment could prove to be disastrous, if it is later determined that Highway 191 was reconstructed in violation of NEPA. Caution dictates that we preserve the *status quo* until all relevant environment considerations are comprehensively evaluated in an Environmental Impact Statement.

## VII. CONCLUSION

This court is not deciding the ultimate issue of whether Highway 191 should remain closed or whether reconstruction work should commence to reopen it. Our role within the purview of NEPA, is to determine if the concerned agencies in this case evaluated the potential impacts to the environment before proceeding with a major federal action. We find that, the concerned agencies failed to comply fully with NEPA when they made the decision to proceed with the Highway 191 reconstruction project; without first preparing an Environmental Impact Statement as required by NEPA, and by relying on an Environmental Assessment prepared ten years earlier.

Having examined fully the objections to the magistrate's report, we have made our *de novo* determination. Finding said objections meritless. Thus no valid reason has been offered why the magistrate's report and recommendation should not be adopted.

WHEREFORE, in view of the above, the findings of the magistrate are affirmed, and plaintiffs' motion for summary judgment in this case is hereby GRANTED. Defendants' cross-motion for summary judgment is DENIED. Consequently it is ORDERED that defendants Thomas D. Larson, Dale Robertson, Federal Highway Administration, the U.S. Forest Service, their agents, employees, contractors and/or subcontractors be permanently enjoined and restrained from proceeding with construction activities on the closed portion of Highway PR 191, from km. 13.5 to km. 20, until completion of an Environmental Impact Statement by the Federal Highway Administration and/or the U.S. Forest Service and/or any other concerned federal agency.

It is further ORDERED that this matter be and is hereby REMANDED to the concerned agencies for the preparation of an Environmental Impact Statement. We shall retain jurisdiction over this matter until the EIS has been completed, and good cause is shown for rescinding our injunction. Judgment will be entered in accordance with the above.

SO ORDERED.