**SIERRA CLUB, et al., Plaintiffs,**

v.

**Federico PENA, et al., Defendants.**

**No. 3:95 CV 7343.**

United States District Court,
N.D. Ohio,
Western Division.

Feb. 9, 1996.

Terry J. Lodge, Toledo, OH, for Sierra Club, Citizens for Buckeye Basin Parks, Inc., Friends of Mulberry Park, Rick B. Van Landingham, III, Gene Cook, Sandy James, Robert Wayne James, Helen Martin, Henry Martin, Emilie Martin, Edward Knapp, Anthony P. Urbanski, Jeannine Urbanski, Maryann Hollaway, Mara Hollaway.

Robin L. Juni, Department Of Justice, Land & Natural Resources Division, Environmental Defense Section, Washington, DC, Cecilia E. Kim, Department Of Justice, Environmental Protection Section, Washington, DC, Lourdes Santiago, Lawrence J. Kiroff, City Of Toledo, Department Of Law, Toledo, OH, Robin N. Michael, Andrea L. Berlowe, Department Of Justice, Environmental & Natural Resources Div., General Litigation Section, Washington, DC, Ralph J. Lewis, Office Of The U.S. Attorney, Toledo, OH, for Federico Pena, Robert D. Bush.

Robin L. Juni, Department of Justice, Land & Natural Resources Division, Environmental Defense Section, Washington, DC, Cecilia E. Kim, Department of Justice, Environmental Protection Section, Washington, DC, Lourdes Santiago, City of Toledo, Department of Law, Toledo, OH, Robin N. Michael, Andrea L. Berlowe, Department of Justice, Environmental & Natural Resources Div., General Litigation Section, Washington, DC, Ralph J. Lewis, Office of the U.S. Attorney, Toledo, OH, for Fred Hempel.

Andrew J. Ayers, Meister, Ayers & Meister, Toledo, OH, Fred J. Milligan, Jr., Law Offices Of Fred J. Milligan, Jr., Westerville, OH, for W. Ray Luce.

Robin L. Juni, Department of Justice, Land & Natural Resources Division, Environmental Defense Section, Washington, DC, Ellen Beth Leidner, George Michael Payton, Transportation Sec., Office Of The Attorney General, Columbus, OH, Cecilia E. Kim, Department of Justice, Environmental Protection Section, Washington, DC, Frederick C. Schoch, Office Of The Attorney General, Columbus, OH, for Jerry Wray.

John F. Hayward, Terrance K. Davis, Shumaker, Loop & Kendrick, Toledo, OH, for William Knight.

John D. Scouten, Mark S. Schmollinger, Lourdes Santiago, City of Toledo, Department Of Law, Toledo, OH, for Carleton S. Finkbeiner.

Robin L. Juni, Department of Justice, Land & Natural Resources Division, Environmental Defense Section, Washington, DC, Cecilia E. Kim, Department of Justice, Environmental Protection Section, Washington, DC, Lourdes Santiago, Lawrence J. Kiroff, City of Toledo, Department of Law, Toledo, OH, Andrea L. Berlowe, Department of Justice, Environmental & Natural Resources Div., General Litigation Section, Washington, DC, Ralph J. Lewis, Office of the U.S. Attorney, Toledo, OH, for Togo D. West, Jr.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on numerous Motions, which can be divided into four

general categories: (1) Plaintiffs have filed a motion requesting authorization to file a second amended complaint; (2) Plaintiffs have filed a motion to order supplementation of the administrative record in this case, and have proffered such a supplement; (3) the various Defendants have filed numerous motions for summary judgment and/or dismissal of Plaintiffs' complaint; and (4) several non-dispositive motions relating to administration and deadlines in this case are pending. For the following reasons, Plaintiffs' motion again to amend their complaint will be denied. Plaintiffs' proffered supplement will be admitted into the record. Defendants' motions for summary judgment will be granted. All other motions will be denied as moot.

## BACKGROUND

The Sierra Club, along with several local individuals and organizations, brought this suit seeking to prevent the construction of an urban corridor development project known as the Buckeye Basin Greenbelt Project ("Project"). The named defendants, sued in their official capacities, are the Secretaries, Directors, and/or Administrators of the United States Department of Transportation ("USDOT"), the Advisory Council on Historic Preservation ("ACHP"), the Federal Highway Administration ("FHWA") and the Army Corps of Engineers ("the Corps") (collectively, "the Federal Defendants"); the Ohio Historical Preservation Office ("OHPO"), the Ohio Department of Transportation ("ODOT"), and the Ohio Environmental Protection Agency ("OEPA") (collectively, "the State Defendants"); and the Toledo Metro Area Council of Governments ("TMACOG"), and the Mayor of the City of Toledo ("Toledo" or "the City") (collectively, "the Municipal Defendants").

The Project is designed to provide commercial, industrial and residential development in North Toledo, with access to be provided by a new four-lane highway. There is some dispute as to what components constitute the Project. Plaintiffs state that it will consist of (1) a 3.6 mile parkway from the intersection of Manhattan Boulevard and Summit Street to Cherry Street ("Parkway"); (2) a paved bikeway paralleling the parkway, extending from Detwiler Park to Cherry Street ("Bikeway"); (3) a paved connection of the parkway through the Central Business District to the Anthony Wayne Trail ("CBD Connection"); (4) an extension of Champlain Street from its northeastern terminus to beyond Interstate 280 ("Champlain Extension"); and (5) developments including four industrial parks, an expansion of Forest Cemetery and Miracle Park, and possibly a prison ("Development Scheme"). Defendants, while not disputing that the City has *contemplated* all of the above construction projects, claim that the Project consists of only the Parkway, Bikeway, and Champlain Extension. Defendants believe and contend that the proposed CBD Connection and Development Scheme are projects separate and apart from the Buckeye Basin Greenbelt Parkway Project.

The Buckeye Basin Greenbelt Parkway Project was first proposed in 1972 and federal funding was first requested for the Project in 1974. The National Environmental Protection Act of 1970 ("NEPA") requires that an Environmental Impact Statement ("EIS") be filed before any major federal action significantly affecting the environment is undertaken. The FHWA delegated the preparation of the EIS to ODOT, which largely redelegated the actual preparation and performance of the environmental studies to the City and a management team appointed by Toledo's City Manager. A draft EIS for the Project was completed in 1981, and the final EIS was approved by FHWA on April 16, 1984.

Because the Buckeye Basin contains naturally-occurring wetlands, it is also subject to federal laws prohibiting federally subsidized construction in wetlands areas unless there is no practical alternative to such construction, and all practical measures to minimize harm to wetlands are taken. Before fill material can be placed in a wetland, the party seeking to fill the wetland generally must obtain a special permit, called a § 404 permit, from the Army Corps of Engineers, except that a general, nationwide permit authorizes the filling of isolated wetlands of less than ten acres in certain circumstances. The Corps determined in 1979 that the national permit

covered the Buckeye Basin wetlands, and a § 404 permit was not required. Subsequent to the Corps' determination, the legal definition of "wetlands" changed, and, in 1988 the Corps determined that a § 404 permit was required. The City applied for such a permit in 1990; it was granted in 1994.

The Project is scheduled to span the construction seasons of 1996 and 1997, and be completed in mid–1998.

Plaintiffs have filed suit challenging the approval, funding and planned construction of the Project, especially the Parkway, Bikeway, and Champlain Street Extension. They allege numerous violations of NEPA; the Environmental Quality Improvement Act of 1970; the National Historic Preservation Act; the Intermodal Surface Transportation Efficiency Act ("ISTEA"); the Clean Water Act; and the Clean Air Act. On October 6, 1995, this Court denied Plaintiffs' motion for a preliminary injunction against the letting of contracts for the Project.

### PLAINTIFFS' MOTION TO FILE AMENDED COMPLAINT

■ Plaintiffs have moved to file a second amended complaint adding five new claims against the Army Corps of Engineers. The Federal Defendants, ODOT, and the Municipal Defendants have filed opposition thereto. The Court freely grants a party leave to amend its pleadings "when justice so requires." Fed.R.Civ.P. 15(a). The disposition of a motion to amend is within the sound discretion of the trial court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Such a motion should be denied where the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *Crawford v. Roane,* 53 F.3d 750, 753 (*citing Ford v. Ford,* 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962); *Marx v. Centran,* 747 F.2d 1536, 1550 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

■ The Court finds that justice does not in this instance require that Plaintiffs be granted leave to amend their pleadings as they have moved to do. First, allowing Plaintiffs to amend their complaint could not result in any new or additional recovery for Plaintiffs, even if they were to prevail on their claims. Plaintiffs' proposed additional claims are based on the same administrative record as the original claims, and stand or fall with the original claims. If the Court determines that the administrative record is inadequate on Plaintiffs' original claims, the injunction requested by Plaintiffs must issue; if the Court determines that the administrative record is adequate on Plaintiffs' original claims, the injunction requested by Plaintiffs must be denied. Second, if the Court permits amendment of Plaintiffs' complaint at this late juncture, when four motions for summary judgment are pending, the ultimate disposition of the case could be delayed at significant cost to Defendants. If execution of the contracts at issue in this case is delayed for the months required for yet another round of motions for summary judgment and responses thereto, the Project might well be delayed into a third construction season. Third, the Court finds that most of Plaintiffs' proffered additional complaints are little more than restatements of Counts already contained in Plaintiffs' first amended complaint. Justice does not require this Court to permit amendment for *rechauffé.* Finally, based on the Court's determination, *infra,* that summary judgment for Defendants is appropriate in this case, the Court finds that Plaintiffs' proffered amendment would be futile.

Accordingly, Plaintiffs' motion for leave to amend their complaint (Doc. No. 149) is denied.

### PLAINTIFFS' PROFFERED SUPPLEMENTATION

Plaintiffs have moved the Court to order the administrative record filed by Defendants supplemented by several additional records related to the Project., They have requested admission of administrative records maintained by OHPO and OEPA; additional Army Corps of Engineers documents; additional FHWA and ODOT records; the City of Toledo's Buckeye Basin Administrative Record; and the ACHP record. In connection with this motion, Plaintiffs have provided

a proffer of exhibits containing most of the items Plaintiffs seek to have admitted.

The Defendants object to the introduction of this evidence. They have filed opposition to Plaintiffs' motion seeking to supplement the administrative record, and have moved to strike Plaintiffs' proffer. Defendants argue that the items proffered by Plaintiffs are not properly part of the record, and are irrelevant to the Court's review of the agencies' determinations. They claim also that admission of the extra materials will serve only to delay resolution of the case.

■ Judicial review of agency actions ordinarily is limited to the administrative record in existence, and the task of the reviewing court is to apply the appropriate standard of review to the record presented by the agency to the reviewing court. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–1607, 84 L.Ed.2d 643 (1985) (*citing Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)); *FTC v. Owens–Corning Fiberglas Corp.,* 853 F.2d 458, 461 n. 5 (6th Cir.1988). The Sixth Circuit has held, however, that a reviewing court evaluating agency action may consider additional evidence to determine if the agency examined all the relevant factors to its decision. *United States v. Akzo Coatings of Am., Inc.,* 949 F.2d 1409, 1428 (6th Cir.1991).

■ The Court finds that the equities in this case favor granting Plaintiffs' motion to supplement the record as to the items contained in Plaintiffs' proffer, and denying Plaintiffs' motion to supplement as to all other items. The items already submitted on the record cause no harm and may be helpful to the Court. Defendants will incur no additional cost or delay, because the items have already been provided by Plaintiffs. Because the case is being tried to the Court, the Defendants need not worry that a jury will misuse the evidence. The Court is able to recognize and disregard any portions of Plaintiffs' proffer that may be cumulative or irrelevant. The Court's consideration of the additional proffer will not turn the analysis into an exercise in *de novo* review.

The equities balance differently as to all other items requested by Plaintiffs. An order to supplement with any items not yet in the record could cause cost and delay to Defendants. Plaintiffs have not made a sufficient showing of "bad faith or improper behavior" as to justify such an affirmative order. *See Citizens to Preserve Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825. Supplementation with those items will not be ordered.

Accordingly, Plaintiffs' motion to order supplementation of the administrative record (Doc. No. 109) is granted as to the items contained in Plaintiffs' proffer (Doc. Nos. 146 & 147), and denied as to all other matter. Defendants' motion to strike Plaintiffs' proffered record (Doc. No. 157) is denied.

## MOTIONS FOR DISMISSAL OR SUMMARY JUDGMENT

There are now six pending motions for summary judgment or dismissal of Plaintiffs' complaint. The Federal Defendants have filed a motion for dismissal of Counts I, V and part of VIII of Plaintiffs' complaint, and a separate motion for summary judgment on all counts. ODOT has filed a motion for summary judgment on all counts. OHPO has filed a motion for summary judgment on all counts. The Municipal Defendants have filed a motion to dismiss and/or for summary judgment, and TMACOG has filed a separate motion for summary judgment on all counts.

Plaintiffs failed to respond to these motions by the deadline imposed by the Court, but have submitted opposition to each motion, and have moved for leave to file these oppositions. The Court now grants Plaintiffs' motion (Doc. No. 142) to file responses to the various dispositive motions in this case. Plaintiffs' motion to file a surreply to the Federal Defendants' reply in support of Defendants' motion for summary judgment (Doc. No. 160) is also granted.

Since there is significant overlap in the arguments raised by the Defendants in their various motions for summary judgment or dismissal, the Court addresses the parties' motions and arguments made therein collectively.

## I. Challenges to the Court's Jurisdiction

### A. Lack of Statutory Basis for Jurisdiction over Certain Claims

1. Count V: Claims under the Clean Air Act and the Intermodal Surface Transportation Efficiency Act

In Count V of their Complaint, Plaintiffs allege certain violations of the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, and the Intermodal Surface Transportation Efficiency Act of 1991, Pub.L. No. 102–240, 105 Stat. 1914.

The CAA directs the Environmental Protection Agency ("EPA") to establish national air quality standards setting forth acceptable levels of certain air pollutants. 42 U.S.C. § 7409. Areas where pollutant concentrations exceed the level set by the EPA are designated as "nonattainment areas." 42 U.S.C. § 7407(d). Under ISTEA, federal funds may not be programmed for any highway project in a nonattainment area that will result in a significant increase in carrying capacity for single-occupant vehicles unless the project is part of an approved congestion management system. 23 U.S.C. § 134(*l*). At the time the funding decisions here at issue were made, the Toledo metropolitan area was classified as a moderate nonattainment area. Plaintiffs claim that the Toledo area does not have an approved congestion management system, so federal funding of the Project is prohibited under ISTEA. Toledo was reclassified as an attainment area shortly after Plaintiffs' suit was filed.

Plaintiffs claim that Defendants violated CAA by failing to include the CBD Connector in a transportation improvement plan ("TIP") that conforms to the state implementation plan ("SIP") for congestion management as required by 42 U.S.C. § 7506(c).

Finally, Plaintiffs claim that Defendants failed to prepare a major investment study ("MIS") for the Project as required by 23 U.S.C. § 134.

### a. Claim under the Clean Air Act

The Defendants have moved this Court to dismiss the claim Plaintiffs bring under the Clean Air Act, failure to include the CBD Connector in the TIP, on the ground that the statutory provision is inapplicable to the facts before the Court. The parties agree that every portion of the Project except the CBD Connector is included in a conforming TIP. Defendants argue that the CBD Connector is not part of the Project, and therefore was not required to be included in the TIP.

■ Plaintiffs respond that Defendants have improperly segmented the Project to exclude the CBD Connector, which ought properly to be included. The Court finds that the parties' arguments on this issue go to the merits of the case—the extent and components of the Project—rather than to the issue of whether the Court has jurisdiction to hear the merits.

A nonmerits disposition of this issue is, therefore, inappropriate. The Court has authority to address Plaintiffs' claim under the Clean Air Act on the merits.

### b. Claims under the Intermodal Surface Transportation Efficiency Act

The remaining two claims in Count V arise under the Intermodal Surface Transportation Efficiency Act. The Defendants have urged this Court to dismiss Plaintiffs' claims brought under ISTEA on the ground that no private right of action under ISTEA exists. The issue of whether a private right of action under ISTEA exists is a question of first impression in this jurisdiction. There is little case law directly on point; this Court has discovered only one reported case in any federal jurisdiction addressing the issue.[1]

■ The issue, nonetheless, is governed by well-established principles of legislative construction that have been set forth by the Supreme Court and the Sixth Circuit in analogous instances. The touchstone of the

1. *Town of Secaucus v. United States Dept. of Transp.*, 889 F.Supp. 779, 786–89 (D.N.J.1995), presents an excellent discussion of the issue. There are, to be sure, a few reported decisions in which the district court allowed a private action under ISTEA without addressing the issue of whether such a right of action exists. *See, e.g., Clairton Sportsmen's Club v. Pennsylvania Turnpike Comm'n*, 882 F.Supp. 455 (W.D.Pa.1995); *Conservation Law Foundation v. Federal Highway Admin.*, 827 F.Supp. 871 (D.R.I.1993).

analysis is congressional intent: whether Congress intended in passing the statute to provide a private right of action. *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979).

■ The Supreme Court has provided several factors for courts to use in determining whether a private remedy is implicit in a statute not expressly providing one.

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted) (emphasis in original). The Sixth Circuit has consistently followed this four-factor test in determining whether such a right of action exists. *See, e.g., Ellison v. Cocke County, Tenn.,* 63 F.3d 467, 470–71 (6th Cir.1995); *Smith v. Dearborn Financial Servs., Inc.,* 982 F.2d 976, 979–80 (6th Cir.1993); *American Fed'n of State, County & Mun. Employees Local 506 v. Private Indus. Council,* 942 F.2d 376, 378 (6th Cir.1991); *Kaiser v. United States Postal Serv.,* 908 F.2d 47, 50–52 (6th Cir.1990).

■ Under the *Cort* test as interpreted by subsequent decisions, the Court first looks at the language of the statute itself. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981); *Ellison,* 63 F.3d at 470;

*Kaiser,* 908 F.2d at 50. The question the Court asks "is not simply who would benefit from the act, but whether Congress intended to confer federal rights upon those beneficiaries." *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) (citation omitted). Plaintiffs have not pointed to any language in the Act from which the Court can find the "class of beneficiaries distinguishable from the general public" it must find in order to imply a private right of action. *See Town of Secaucus v. United States Dept. of Transp.,* 889 F.Supp. 779, 786 (D.N.J.1995) (citing *Rousseau v. City of Philadelphia,* 589 F.Supp. 961, 961 (E.D.Pa.1984); *United States v. FMC Corp.,* 717 F.2d 775, 781 (3rd Cir.1983).

Plaintiffs argue that any user of the resources protected by ISTEA is a beneficiary of the Act and can bring a claim thereunder. They cite to cases brought under other federal statutes in which citizens *qua* citizens were found to have standing to bring suit to enforce environmental legislation. *Coalition Against a Raised Expressway, Inc. v. Dole,* 835 F.2d 803 (11th Cir.1988); *Citizens Comm. Against Interstate Route 675 v. Lewis,* 542 F.Supp. 496, 570 (S.D.Ohio 1982); *James River v. Richmond Metro. Auth.,* 359 F.Supp. 611, 625 (E.D.Va.1973).

■ Plaintiffs' reliance on these cases is misplaced. In each of the cases cited by Plaintiffs, the federal environmental statute at issue conferred a private right of action. The issue in those cases was whether the plaintiffs had standing to bring suit, given that the private right of action existed. The question of whether a given plaintiff has standing to bring suit under an enabling statute is different from the question of whether the right to bring suit exists in the first place. Nor have Plaintiffs shown ISTEA to contain any "right- or duty-creating language," which the Supreme Court has held is generally "the most accurate indicator of the propriety of implication of a cause of action." *Cannon v. University of Chicago,* 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979).

■ Based on the dearth of evidence to the contrary, the Court must conclude that

the language of ISTEA does not indicate Congressional intent to create a private cause of action.

The second factor the Court addresses is whether there is any external indication of legislative intent either to create a private right of action or to deny one. The Court examines the context of the statute " 'with an eye toward determining Congress' perception of the law that it was shaping.' " *Ellison,* 63 F.3d at 467 (*citing Thompson,* 484 U.S. at 180, 108 S.Ct. at 516).

■ Again, Plaintiffs have pointed to nothing in the legislative history of ISTEA or the context surrounding its passage from which the Court can conclude that Congress intended to create a private right of action under the statute. The district court in *Town of Secaucus* held that ISTEA addresses environmental and social factors "by requiring the Secretary to make written findings that such factors were considered and that parties in interest were given an adequate opportunity to present their views," rather than by providing a private right of action under the statute. 889 F.Supp. at 788. This Court agrees. Plaintiffs have not shown that the second factor of the *Cort* test is satisfied.

■ The Court addresses the third and fourth factors of the *Cort* test only "if the first two factors give indication of congressional intent to create the remedy." *Sierra Club,* 451 U.S. at 298, 101 S.Ct. at 1781 (*citing Touche Ross,* 442 U.S. at 574–76, 99 S.Ct. at 2488–89). Since the first two factors indicate that Congress did not intend to provide a private remedy under ISTEA, the Court ends its inquiry here.

■ No private right of action exists under ISTEA. Accordingly, Plaintiffs' claims arising under ISTEA are dismissed for failure to state a claim upon which relief may be granted.

2. Count VIII: Claims under the Clean Water Act

In Count VIII of their amended complaint, Plaintiffs raise certain claims under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.,* against Defendants. Plaintiffs claim that the City of Toledo and ODOT failed to obtain, and the Corps failed to require, proper permits for the Project.

Defendants have moved to dismiss on the grounds that suit can be brought under the Clean Water Act only to enforce nondiscretionary functions of the Administrator, so Plaintiffs can bring no claim upon which relief can be granted as to the issuance or denial of a § 404 permit. The citizens' suit provision of the Clean Water Act provides that a citizen may bring suit:

(1) against any person (including (i) the United States, and (ii) any other governmental agency . . . ) who is alleged to be in violation of . . . an effluent standard or limitation under this chapter . . . , or

(2) against the Administrator [of the Environmental Protection Agency] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

33 U.S.C. § 1365(a). Defendants argue that no private right of action against the Army Corps of Engineers exists because Plaintiffs may not bring suit against the Corps under either of these provisions. Plaintiffs may not sue the Corps under § 1365(a)(1) because the Corps is not itself in violation of an effluent standard. Plaintiffs may not sue the Corps under § 1365(a)(2) because that clause authorizes suit only against the Administrator of the Environmental Protection Agency.

The Court agrees that Plaintiffs may not bring a suit *de novo* against the Corps under 33 U.S.C. § 1365(a). Plaintiffs' action is, however, properly brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.,* which gives the district court jurisdiction to review any "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

■ The fact that the citizens' suit provision of the Clean Water Act does not expressly authorize suit against the Corps for issuance of a § 404 permit does not change this result. If the Clean Water Act contained no citizens' suit provision at all, APA would apply exactly as it does to all other

statutes that do not expressly authorize citizen suits. The fact that Congress has chosen with regard to Clean Water Act compliance to give citizens the authority in some circumstances to act as private attorneys general cannot be taken by the Court as an indication that Congress intended to cut off the additional remedies otherwise available to citizens for review of agency action.

Defendants have also referred the Court to several cases standing for the proposition that a decision of the Corps to deny a permit or not to bring an enforcement action is unreviewable. *See, e.g., Missouri Coalition for the Env't v. Corps of Eng'rs,* 866 F.2d 1025, 1032 n. 10 (8th Cir.1989); *Harmon Cove Condominium Ass'n, Inc. v. Marsh,* 815 F.2d 949, 951–52 (3d Cir.1987); *Faust v. South Carolina State Highway Dep't,* 721 F.2d 934 (4th Cir.1983). Defendants overlook the fundamental difference between the decision to *deny* a permit, which is unreviewable, and the decision to *grant* a permit, which is not. Section 404 provides that "the Secretary [of the Army] *may* issue permits" to discharge fill material into wetlands areas. 33 U.S.C. § 1344(a) (emphasis added). Since the Section's language is permissive, the decision of whether or not to issue an otherwise issuable permit is discretionary with the Secretary, and therefore not subject to review.

It is clear, however, that the district courts have jurisdiction under APA to review the Secretary's determination that a permit may issue. *E.g., Conservation Law Found. v. Federal Highway Admin.,* 24 F.3d 1465, 1471 (1st Cir.1994); *Holy Cross Wilderness Fund v. Madigan,* 960 F.2d 1515, 1521 (10th Cir.1992); *Friends of the Earth v. Hintz,* 800 F.2d 822, 831 (9th Cir.1986); *Sierra Club v. United States Army Corps of Eng'rs,* 772 F.2d 1043, 1050 (2d Cir.1985). This Court finds, therefore, that it has subject matter jurisdiction over the Clean Water Act claims raised in Count VIII of Plaintiffs' amended complaint.

*B. Statute of Limitations*

1. Existence of a Statute of Limitations

The Federal Defendants have argued that Plaintiffs' claims against them are barred by the statute of limitations. The statutes under which the Plaintiffs are suing do not contain express limitations periods. Defendants urge the Court to use the six-year limitations period for all suits brought against the United States, 28 U.S.C. § 2401(a). Defendants argue further that claims challenging the sufficiency of an EIS accrue and become ripe for review on the date that the final EIS receives final approval. Since the final EIS was approved on April 16, 1984, they argue, Plaintiffs' claims are time-barred.

The Plaintiffs respond that the Sixth Circuit has never held there to be a statute of limitations for claims brought under NEPA. Since there is no statute of limitations, they argue, the only time limitation on suits brought under NEPA is laches.

Federal courts, including the Sixth Circuit, historically have generally used the doctrine of laches to evaluate the timeliness of suits brought under NEPA without ever addressing the issue of whether the six-year statute of limitations applies to such actions. *See, e.g., Apache Survival Coalition v. United States,* 21 F.3d 895 (9th Cir.1994); *Ecology Ctr. of Louisiana, Inc. v. Coleman,* 515 F.2d 860 (5th Cir.1975); *Steubing v. Brinegar,* 511 F.2d 489 (2d Cir.1975); *Environmental Defense Fund v. Tennessee Valley Auth.,* 468 F.2d 1164 (6th Cir.1972). The few courts to address the statute of limitations issue are split, with the majority finding that the six-year limitations period does not apply to suits brought under NEPA. *Compare Park County Resource Council, Inc. v. United States Dept. of Agric.,* 817 F.2d 609, 616 (10th Cir.1987); *Goshen Road Envt'l. Action v. United States Dept. of Agric.,* 891 F.Supp. 1126, 1132 (D.N.C.1995) (both holding that only laches may form the basis of a time bar to a NEPA action); *with Humane Soc'y of the United States v. Hodel,* 840 F.2d 45, 50 (D.C.Cir.1988); *Zarrilli v. Weld,* 875 F.Supp. 68, 72 (D.Mass.1995) (both holding that the six-year statute of limitations applies to NEPA actions).

This Court finds that the minority rule is the better reasoned. Plaintiffs' action

is not brought under *NEPA,* which provides no private right of action. Correctly stated, Plaintiffs bring an action under the *APA,* which suit alleges violations of NEPA and other federal environmental protection statutes. Courts have consistently held that APA has a six-year statute of limitations pursuant to 28 U.S.C. § 2401(a). *E.g., Village of Elk Grove Village v. Evans,* 997 F.2d 328, 331 (7th Cir.1993); *Wind River Mining Corp. v. United States,* 946 F.2d 710, 712–13 (9th Cir.1991); *Blassingame v. Secretary of the Navy,* 811 F.2d 65, 70 (2d Cir.1987). Accordingly, all of Plaintiffs' claims against the Federal Defendants arising prior to June 8, 1989 are barred by the statute of limitations.

### 2. Application of the Statute of Limitations

The next issue is whether, and to what extent, any of Plaintiffs' claims arose after June 8, 1989.

Count I of Plaintiffs' complaint alleges violations of NEPA in the preparation of the original Environmental Impact Statement. A substantial majority of courts hold that a NEPA claim becomes ripe for review on the date the EIS is approved. *E.g., Steubing v. Brinegar,* 511 F.2d 489, 495 (2d Cir.1975); *Zarrilli,* 875 F.Supp. at 72.[2] The final EIS in this case was approved on April 16, 1984, over five years before the earliest date on which Plaintiffs' may raise a claim against the federal government under NEPA.

 Plaintiffs claim that the approval of the EIS did not trigger the statute of limitations because it was invalid. The Court finds this sort of circular reasoning unconvincing. Plaintiffs would have the Court look to the merits of their claim in order to determine whether the statutory period had run, in order to determine whether it could look to the merits of Plaintiffs' claim. This the Court is not willing to do. The Court holds that the existence of an apparently valid EIS is sufficient to put Plaintiffs on notice that their cause of action has accrued, and therefore to trigger the statutory period.

 Count I, therefore, must be dismissed as to the Federal Defendants. Since NEPA, by its own terms, applies only to federal agencies, no claim under NEPA can be brought against the non-Federal Defendants. Accordingly, Count I of Plaintiffs' Complaint is dismissed in its entirety.

Count II of Plaintiffs' Complaint alleges that the Defendants failed to supplement the EIS as required when changes that were relevant to environmental concerns were made to the original Project. The Project changes giving rise to Count II occurred between 1984 and 1995. The FHWA determined on January 19, 1995 that no supplemental EIS document was required. This claim accrued within the limitations period, and is not time-barred.

Count III of Plaintiffs' Complaint alleges that Defendant USDOT twice violated 23 U.S.C. § 138, which prohibits USDOT from approving any project that requires the use of any publicly owned land from a park, recreation area, or wildlife and waterfowl refuge, or any land from an historical site, unless there is no feasible and prudent alternative to the use of such land and the project includes all possible planning to minimize harm to the site. The first alleged violation occurred in 1984, when USDOT issued a Record of Decision ratifying the Project. The second alleged violation occurred in 1995 when USDOT re-evaluated the Project and determined that no new determination was needed.

Plaintiffs' complaint about the original Record of Decision is time-barred, as it accrued before June 8, 1989. Plaintiffs' second allegation arose after June 8, 1989, and is not barred by the applicable statute of limitations. Accordingly, Count III of Plaintiffs' Complaint is dismissed in part.

Count IV of Plaintiffs' Complaint alleges that the Defendant FHWA improperly delegated its responsibilities under the National Historic Preservation Act. The acts complained of in this Count all occurred as part

---

**2.** The minority hold that the claim accrues when the agency decision is made to proceed with the project, regardless of whether the EIS is approved. *National Wildlife Fed'n v. Goldschmidt,*

677 F.2d 259 (2d Cir.1982); *Puerto Rico Conservation Foundation v. Larson,* 797 F.Supp. 1074, 1078 (D.P.R.1992).

of the preparation of the EIS, which was ratified in 1984. Plaintiffs' claims in this Count are time-barred. Accordingly, Count IV of Plaintiffs' Complaint is dismissed.

Count V of Plaintiffs' Complaint alleges violations of the Clean Air Act and ISTEA. The Court has dismissed the ISTEA claims, *supra*, for failure to state a claim on which relief can be granted. Plaintiff's claim arising under the Clean Air Act is Defendants' failure to include the CBD Connector in the Project. This claim arose in connection with preparation and approval of the EIS in 1984, and is time-barred. Accordingly, Count V of Plaintiffs' Complaint is dismissed.

Count VIII of Plaintiffs' Amended Complaint alleges violations of the Clean Water Act. The various acts of which Plaintiffs complain arose between 1977 and 1992. Plaintiffs' claims arising out of the Corps' 1979 determination that a special permit was not required, and the City's 1988 filling of the wetlands, are time barred, and the Court will not consider them. The § 404 permit here at issue was granted in July, 1992, so Plaintiffs' claims arising directly out of issuance of the permit are not barred by the statute of limitations. Accordingly, Count VIII of Plaintiffs' Amended Complaint is dismissed in part.

## C. Laches

Remaining in the case are Count II of Plaintiffs' Complaint alleging failure to supplement the EIS; the portion of Count III of Plaintiffs' Complaint alleging USDOT's failure to make a needed redetermination of parklands or historic properties affected by the Project; and the portion Count VIII of Plaintiffs' Amended Complaint arising out of issuance of the § 404 permit. The claims in Counts II and III arose in 1995. The claim in Count VIII arose in 1992.

Defendants have moved the Court to dismiss these claims, as with all of Plaintiffs' other claims, on the ground of laches. Laches is a disfavored defense in environmental litigation because the outcome of the suit affects more people than the named plaintiffs. *Environmental Defense Fund,* 468 F.2d at 1182–83. In most of the cases in which laches has been applied to bar a suit alleging violations of NEPA, the project at issue was nearly completed. *See, e.g., Ogunquit Village Corp. v. Davis,* 553 F.2d 243, 245 (1st Cir.1977) (project completed); *Save Our Wetlands, Inc. v. United States Army Corps of Eng'rs,* 549 F.2d 1021, 1028 (5th Cir.) *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977) (large portions of project substantially completed); *Shiffler v. Schlesinger,* 548 F.2d 96, 104 (3d Cir.1977) (project 85–90% complete); *cf. Portland Audubon Soc'y v. Lujan,* 884 F.2d 1233, 1241 (9th Cir.1989) (five-year delay in bringing suit did not give rise to a laches defense); *Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 854 (9th Cir.1982) (eight-year delay in bringing suit did not give rise to a laches defense); *City of Davis v. Coleman,* 521 F.2d 661, 670 n. 11, 677–78 (9th Cir.1975) (laches held inapplicable when project was 50% completed).

Plaintiffs' remaining claims arose not more than three years before Plaintiffs brought suit. The Court cannot hold this period to be an unreasonable and unjustifiable delay in an area of the law in which laches is so disfavored.[3] Accordingly, the Court will address these three claims on their merits.

## II. Arguments on the Merits

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility

---

3. Had some of Plaintiffs' earlier claims not been barred by the statute of limitations, however, the Court would have seriously considered barring those claims on grounds of laches. Even in the NEPA context, where laches is so disfavored, this Court has been unable to find a single case in which a court allowed a suit to be brought after almost twelve years' delay.

of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

**B. Standard of Review**

■ Plaintiffs' action on the three remaining Counts arises under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* The scope of the Court's review under APA is limited; it may set aside the government's action in this case only if Defendants' failure to supplement the EIS or USDOT's failure to conduct a redetermination is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, ... [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D). In making this determination, the Court reviews the administrative record. The record in this case consists of over ten thousand

pages of documents created between 1975 and 1995 by the various Defendant agencies, supplemented by Plaintiffs' proffered exhibits.

**C. Failure to Supplement the EIS**

■ Plaintiffs claim that the Defendants' failure to supplement the EIS was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." A supplemental EIS is required if new information shows that the action will affect the quality of the human environment to a significant extent not already considered. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 374, 109 S.Ct. 1851, 1859, 104 L.Ed.2d 377 (1989). The federal regulations require a supplemental EIS when there are "substantial changes" to the original action or "significant new circumstances or information." 40 C.F.R. § 1502.9(c)(1). A supplemental EIS is not required if the changes result in a lessening of adverse impacts on the environment. 23 C.F.R. § 771.130(b)(1).

Plaintiffs have identified several developments that they claim are significant new circumstances or information requiring a supplemental EIS. They claim that the planned change to the Interstate 280 river crossing will have a significant environmental impact. They claim that the change in the Project specifying an above-ground causeway and altered wetlands fill mitigation plans require a supplemental EIS. They claim that the Defendants failed to consider all of the historical sites in the affected area.

■ The Court has reviewed the administrative record in this case. The record contains several hundred pages of government documents addressing specifically the question of whether a supplemental EIS is necessary. The determination contains a detailed evaluation of all the claims raised by Plaintiffs in this lawsuit. The record indicates that Plaintiffs raised each of their claims with Defendants during the administrative process, that each claim was carefully considered, and that each claim was rejected on its merits. The record indicates that Defendants' evaluation was far from the cursory and arbitrary process Plaintiffs claim it to be. For each of Plaintiffs' claims, there are at

least ten pages, and in most cases twenty to thirty pages, of detailed scientific study by neutral professionals and explanation of why Defendants made the substantive decisions they did. The record reveals a decisionmaking process that was not merely adequate, but exemplary. On such a record, the Court cannot find that Defendants' determination not to supplement the EIS to be arbitrary and capricious or a violation of law.

Defendants' motion for summary judgment is, therefore, granted as to Count II of Plaintiffs' complaint.

### D. Failure to Conduct a Redetermination under 23 U.S.C. § 138

The Federal Aid to Highways Act requires the Secretary of Transportation, before approving any project that requires the taking of certain designated properties, commonly known as § 4(f) properties,[4] to determine that there is no feasible and prudent alternative to taking the land, and that the project includes all possible planning to minimize harm to the affected site. 23 U.S.C. § 138. A determination was made in 1982, and *de facto* ratified in the April 16, 1984 Record of Decision, that there was no feasible and prudent alternative to taking the wetlands and other § 4(f) properties affected by the Project, and that the Project included all possible planning to minimize harm to the affected areas. That determination was made more than six years before Plaintiffs filed suit, and the Court's review of that determination is time barred, as discussed *supra*.

Plaintiffs claim also that the Defendants wrongfully decided on January 10, 1995 that no new § 4(f) sites were present and a redetermination was not needed. The Court has reviewed the portions of the administrative record pertaining to the Secretary's determination that a redetermination was not needed. As with the determination regarding the supplemental EIS, the Court finds that the Defendants heard and carefully considered each of the claims Plaintiffs raised during the

administrative process, and then rejected each claim on its merits. For each of Plaintiffs' claimed sites, the Defendants provided a colorable explanation as to why that site did not need to be included in a redetermination.

■ Defendants' decisionmaking process is revealed by the record to have been neither arbitrary nor capricious, nor in violation of law. The Court cannot disturb Defendants' reasoned findings. Defendants' motion for summary judgment is, therefore, granted as to Count III of Plaintiffs' complaint.

### E. Plaintiffs' Claims Under the Clean Water Act

Plaintiffs' final claim is that Defendants failed to comply with wetlands protection statutes. Federal law generally prohibits federally subsidized construction in wetlands areas unless there is no practical alternative to the construction, Exec. Order No. 11,990, 42 Fed.Reg. 26,961 (1977). Ordinarily, a special permit is granted along with a Statement of Findings or Record of Decision certifying that the proposed project complies with all legal requirements. 33 C.F.R. § 336.1(b)(7). There are circumstances, however, under which wetlands may be filled under a nationwide or regional general permit, without a special permit being required. *Id.*

At the time of the 1984 Record of Decision, the Army Corps of Engineers concluded that the wetlands affected by the Project might be filled under a nationwide general permit allowing the fill of certain isolated wetlands under ten acres. The Corps changed its position in 1990 and determined that a specific permit was required. In 1990, the City applied for a specific permit, which was approved in 1992.

Plaintiffs raise several objections to the application and approval process. First, they allege that ODOT and the Municipal Defen-

---

**4.** A "§ 4(f)" property is a "public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State or local signifi-

cance as so determined by such officials." 23 U.S.C. § 138; 49 U.S.C. § 303. The predecessor to the current statutes contained the above language in its section 4(f), and that phrase remains a common designation.

dants committed sundry violations of the federal regulations in the application process. They claim that the 1990 application was not properly signed by an ODOT official, as required by 33 C.F.R. § 325.1(d)(7). They claim that ODOT failed to include on the application three acres of wetlands known as Manhattan Marsh. They claim that Defendants improperly failed to include the CBD Connector and Development Scheme in the application, although the federal regulations require an applicant for a special permit to delineate any projects reasonably related to the project for which a permit is sought, 33 C.F.R. § 325.1(d)(2). Finally, they claim that there was inadequate opportunity for public notice and comment on the amended application.

■ The Court's review of the 1990 application shows the signature of Bernard B. Hurst, then-director of ODOT, on the signature line. The administrative record and pleadings on file indicate that the Manhattan Marsh wetlands were filled, whether legally or not, before the 1990 application, and before the June 8, 1989 statute of limitations period. The Manhattan Marsh fill is not a proper subject for this Court's review. Plaintiffs' claims on these aspects of the application process are not meritorious.

Plaintiffs' claim that Defendants improperly failed to include the CBD Connector and Development Scheme in the application is another incarnation of Plaintiffs' oft-repeated claim that the Defendants improperly segmented the Project in order to avoid federal law and regulations. There is no merit to Plaintiffs' argument of improper segmentation. The CBD Connector connects logical termini. Both the CBD Connector and the Development Scheme have utility independent of the Project. Neither the CBD Connector nor the Development Scheme restricts consideration of alternatives for other reasonably foreseeable transportation improvements. *See* 23 C.F.R. § 771.111(f). The Court finds, therefore, that the CBD Connector and the development scheme are not part of the Project. These independent projects are not so closely connected to the Project as to require their mention in a § 404 permit application.

■ As to the opportunity for notice and comment, the Plaintiffs do not dispute that the language of the public notice satisfies the technical requirements of 33 C.F.R. § 325.3. Plaintiffs argue, however, that the "substance" of the notice was deficient, in that it did not adequately inform the populace that secondary impacts would cause the taking of all the wetlands. Plaintiffs' argument is wholly without merit. The Court need not choose in this instance between deciding whether Defendants must comply with the "letter" of the law, as Plaintiffs concede they have done, or the "spirit" of the law, which is public awareness of the potential environmental impacts of the proposed construction. The administrative record in this case indicates that both the general public and Plaintiffs specifically were intimately aware of the details of the Project and its potential environmental impacts. The administrative record is replete with letters from the public and from Plaintiffs; these communications indicate that the public both was aware of the Project's potential effects and knew how to submit comment on these effects to the appropriate officials. The Court finds that the opportunity for notice and comment was satisfied.

Plaintiffs' contention that the Corps improperly failed to issue new public notices for Defendants' revised applications in March and May, 1992 is similarly lacking merit. The district engineer is required to issue a revised public notice only "if in his view there is a change in the application data that would affect the public's review of the proposal." 33 C.F.R. § 325.2(a)(2). The main design change in the 1992 revised applications resulted in a 34% reduction in the amount of wetlands impacted by the Project. The district engineer's determination that this change would not affect the public's review of the proposal in the direction suggested by Plaintiffs was reasonable.

■ Plaintiffs next object that the Corps failed to refer in their public notice to the requirement that the Project receive water quality certification from OEPA, such reference being required by 33 C.F.R. § 325.3(a)(8). The Defendants concede that

the required reference was omitted from the notice, but argue that the error was harmless, since OEPA in fact received notice that its certification would be requested. The Sixth Circuit has applied a harmless error rule in cases brought under the APA, where the mistake has no bearing on the ultimate decision or causes no prejudice. *See Blackman v. Busey,* 938 F.2d 659, 664 (6th Cir. 1991). The purpose of the water quality certification reference in the public notice is to notify *OEPA* that its certification will be needed. This notice requirement to OEPA was functionally satisfied. Plaintiffs have suggested no credible reason why omission of the reference to OEPA would affect the public's review of the proposal, or in any way change the comments made by them to the Corps. Therefore, the Court finds this omission to be harmless error.

■ Plaintiffs' next objection is that ODOT failed to show that no practical alternatives to the proposed roadway existed. This objection lacks merit. While Plaintiffs may disagree with Defendants' substantive determination that there were no practical alternatives to the proposed roadway, the administrative record indicates that several alternatives were proposed, weighed, and rejected on the merits. The administrative record on this one issue is lengthy, detailed, and exhibits a careful evaluation on the part of Defendants. The Court cannot hold ODOT's determination that no practical alternatives to the proposed roadway existed to be arbitrary.

Plaintiffs next object to the Project because the Corps issued a § 404 permit without first requiring a final, detailed mitigation implementation plan. The Defendants agree that the permit was authorized on the basis of general "mitigation goals," which will later become a detailed implementation plan. Defendants argue, and have cited to cases supporting the proposition, that a § 404 permit conditioned on future implementation of a mitigation plan does not violate the Clean Water Act. *See National Wildlife Fed'n v. Whistler,* 27 F.3d 1341, 1343, 1346 (8th Cir. 1994); *Holy Cross Wilderness Fund v. Madigan,* 960 F.2d 1515, 1528–29 (10th Cir. 1992); *Friends of the Earth v. Hintz,* 800

F.2d 822, 825–26, 836–37 (9th Cir.1986). Plaintiffs have cited to neither regulations nor case law supporting their contention that mitigation plans must be final before a permit may issue. Accordingly, the Court cannot hold that the Corps' failure to require a detailed mitigation implementation plan was done in violation of the law.

■ Plaintiffs next object that the Corps failed to prepare a full-scale EIS, issuing instead an "Environmental Assessment/Finding of No Significant Impact." A federal agency must prepare an EIS for any "major Federal action[ ] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EIS is not always required, however. In a recent case factually similar to this one, the Sixth Circuit has held that the statute speaks only to "significant *adverse* impacts, not *beneficial* impacts. If the agency reasonably concludes, on the basis of the environmental assessment, 'that the project will have no significant adverse environmental consequences,' an environmental impact statement is not required." *Friends of Fiery Gizzard v. Farmers Home Admin.,* 61 F.3d 501, 504–05 (6th Cir.1995) (quoting *Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 855 (9th Cir.1982)).

This is not to say that a significant effect requiring an EIS may not exist even if the federal agency believes that on balance the environmental effect of the project will be beneficial. *Id.* at 505–06. But, the Court in this case, like the Sixth Circuit in *Fiery Gizzard,* faces a situation in which the administrative record reveals that the federal agency conducted a detailed survey of the potentially affected areas, considered the impact of the planned project, and determined that there would be no significant adverse effects on the environment. Plaintiffs misrepresent the Statement of Findings produced by the Corps to the extent that they claim it contains several findings of "substantial adverse impacts." When read in context, the phrases quoted by Plaintiffs in their opposition to Defendants' motion for summary judgment prove to refer to either (a) temporary impacts during the construction phase of the Project only, or (b) effects that would occur in the absence of mitigation efforts.

Every reference to adverse impacts concludes with the determination that there are no substantial long-term detrimental impacts from the Project. Every cited adverse impact is determined to be either minor or temporary, when considered with the Project's mitigation goals. The Court finds, therefore, that the Corps' determination was made in accordance with the applicable regulations and was neither arbitrary nor capricious.

■ Finally, Plaintiffs allege that the Corps violated its regulations for the protection of historic properties, 33 C.F.R. Part 325, App. C. Specifically, they claim that the Corps failed to make its historic properties findings available to the ACHP in the § 404 permit proceedings. The administrative record reveals, however, and Plaintiffs do not contest, that FHWA submitted its findings of "no adverse impact" to ACHP, findings that were identical to the findings produced by the Corps. Whatever technical violation there may have been in the fact that FHWA, rather than the Corps, submitted the papers to ACHP, it is clear that the purpose behind the statute was satisfied. ACHP had full opportunity to comment, and made an independent determination of "no adverse impact." The Corps' failure to submit its findings itself was harmless error.

Defendants' motion for summary judgment is granted as to Count VIII of Plaintiffs' amended complaint.

### REMAINING MOTIONS

The Court's determination on the above motions for summary judgment effectively disposes of this case. All remaining pending motions are, therefore, denied as moot.

### CONCLUSION

For the above reasons, Plaintiffs' motion for leave to amend their complaint (Doc. No. 149) is denied.

Plaintiffs' motion to order supplementation of the administrative record (Doc. No. 109) is granted as to the items contained in Plaintiffs' proffer (Doc. Nos. 146 & 147), and denied as to all other matter. Defendants'

motion to strike Plaintiffs' proffered record (Doc. No. 157) is denied.

Plaintiffs' motion to file responses to the various dispositive motions in this case (Doc. No. 142) is granted. Plaintiffs' motion to file a surreply to the Federal Defendants' reply in support of Defendants' motion for summary judgment (Doc. No. 160) is also granted.

The portions of Count V of Plaintiffs' complaint containing claims arising under ISTEA are dismissed for failure to state a claim upon which relief may be granted. Counts I, IV, and V, and the portions of Counts III and VIII containing claims arising before June 8, 1989 are dismissed under the applicable statute of limitations.

The Defendants' motion for summary judgment is granted on Counts II, III, and VIII of Plaintiffs' Amended Complaint.

All other currently pending motions are denied as moot.

IT IS SO ORDERED.