Edward BOLL, et al., Plaintiffs,

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.**

Civil Action No. 93–257Erie.

United States District Court,
W.D. Pennsylvania.

April 3, 2003.

Mark O. Prenatt, Schroeck & Associates, Erie, PA, for plaintiffs.

Robert R. Leight, Paul E. Skirtich, U.S. Attorney's Office, Pittsburgh, PA, for John W. Morris, defendant.

Thomas F. Halloran, Office of Atty. Gen., Pittsburgh, PA, for James S. Bierly, Jr., Paul J. Mahon, Ross J. Huhn, Donald N. Lacy, T.T. Metzgar, Jr., Howard E. Pflugfelder, Leon Reed, William J. Sabotose, J. Wayne Yorks, defendants.

**Opinion**

COHILL, Senior District Judge.

Plaintiffs in this matter are the owners of certain real estate in North East Township, Erie County, Pennsylvania, whose property either fronts directly on Lake Erie or includes the right to use the beach which fronts on the lake. Defendant Colonel John W. Morris is District Commander of the United States Army Corps of Engineers, Buffalo, New York District ("the Corps"). Also named as defendants are individual members of the Pennsylvania Fish and Boat Commission ("PFBC" or "the Commission"), formerly the Pennsylvania Fish Commission. Before the Court are motions for summary judgment filed by the Corps (Doc. 80) and by the Commission (Doc. 75), with supporting briefs and exhibits, and plaintiffs' response thereto.

We have original jurisdiction 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.[1] We also have original jurisdiction over an action to compel an officer or employee of any United States agency to perform a duty owed to the plaintiff under 28 U.S.C. § 1361. Having considered the submissions of the parties and the applicable law, for the reasons set forth below we will grant summary judgment in favor of both defendants and against the plaintiffs.

## Background

This action arises from the construction of a recreational marina ("the Marina"), on the shore of Lake Erie in North East Township, and its effect on the plaintiffs' property.[2]

In the Spring of 1990, the defendants, the United States Army Engineer District, Buffalo, New York,[3] and the Pennsylvania Fish and Boat Commission, approved and endorsed permits for the construction of a recreational marina and boat launching facility by a private developer. The facility was developed on property owned by the Commission. The Corps conducted an Environmental Assessment before allowing the permits. Defs.' Ex. 15. Water Obstruction and Encroachment Permit No. # 25-424, issued on April 23, 1990, authorized Safe Harbor Marina, Inc. ("Safe Harbor") to construct a marina, breakwall, and bulkheads. Special Condition L of this permit required Safe Harbor to periodically dredge and truck, each year, material accreted along the west breakwall to the east side of the Marina. This was to replenish any depletions caused by the Marina's interruption of the littoral drift, or the movement of suspended natural sediment by wave action.

On May 8, 1990, the Corps issued Permit No. 90-476-1 ("the Permit"). This permit authorized Safe Harbor to create the North East Marina, including the construction of rubble filled bin walls with a stone facing, a rubblemound breakwall, and a concrete bulkhead with loading docks. The company was to perform initial and periodic mechanical maintenance and dredging, and dredge accreted sand and dispose of it as littoral drift nourishment. Special Condition 20 of this permit required Safe Harbor to bypass all littoral drift material west of the western bin wall that is attributable to the Marina. General Condition 5(c) authorized the Corps to take enforcement action if the permittee failed to comply with the Permit's conditions.

The Marina was completed in 1991. Plaintiffs began to complain to the Corps that their beaches were eroding, and the permits were modified several times with regard to bypassing accreted material from the west of the Marina to the east-side beaches. The Corps responded to these complaints. In December, 1991, Corps sent a letter ordering Safe Harbor to comply with Special Condition 20. Defs.' Ex. 9 at 48-51. In August of 1992, the Corps suspended Safe Harbor's permit due to non-compliance. Defs.' Ex. 9 at 42-

---

1. The complaint asserts that the Environmental Quality Improvement Act of 1970, 42 U.S.C. § 4371, *et seq.*,("EQIA") provides an alternate basis of jurisdiction over some of plaintiff's claims. Compl. at ¶ 16. Plaintiffs' reliance on this statute is misplaced. Plaintiffs' claims do not assert a cause of action under the EQIA, which protects the nation's waters against caustic substances.

2. The pleadings and submissions in this case refer to the marina project as both the North East Marina and the Safe Harbor Marina. They are the same entity, which we will refer to simply as "the Marina."

3. The Pittsburgh District of the Corps of Engineers received primary responsibility for the management of the Marina project, including permit compliance, in 1995. Defs.' Ex. 10 at ¶ 3, Declaration of Bernard Swegman.

43. Ultimately, Safe Harbor was unable to comply with the terms of the Permit. After a number of unsuccessful attempts to bypass sediment by truck or by hydraulic jet pump, the company declared bankruptcy. On September 8, 1993, the Marina and operating permit were transferred to the PFBC, which continues to own and operate the Marina today. Defs.' Ex. 9.

On August 24, 1993, plaintiff property owners filed this action in federal court, alleging that construction of the Marina had caused substantial erosion of the beaches adjacent to their properties. Compl. at ¶ 28. In Count I, plaintiffs contended that the Corps had failed to enforce the conditions of the Permit. Compl. at ¶¶ 75–77. Count III alleged that the Commission had permitted a nuisance to be constructed on its property, and demanded injunctive relief. Count IV contained allegations against Safe Harbor.[4] The case was assigned to Judge Glenn Mencer.

Motions to dismiss filed by the Corps and Safe Harbor were denied by Order dated November 2, 1993. Plaintiffs' Motion for a Preliminary Injunction was also denied, after a hearing, on November 18, 1993. On April 5, 1994, plaintiffs filed a second amended complaint recognizing that the Permit had been transferred to the Commission and adding the individual commissioners as defendants.

This case was reassigned to the undersigned on April 22, 1994. Defendant PFBC filed a motion to dismiss, which was denied by Order dated November 17, 1994.

After the PFBC took over the Permit in September of 1993, it contracted to conduct field studies on the accretion of material, and retained consultants to formulate a long-range compliance plan. Material was moved in June and November of 1994.

Defs.' Ex. 10 at A–2. PFBC's long-range compliance plan was submitted to the Corps and accepted in September, 1992. Defs.' Ex. 13. The plan provided for bi-annual bypassing, under the terms of the Permit. Responsibility for compliance with the Permit was taken over by the Corps' Pittsburgh division in 1995. Defs.' Ex. 10. The Corps has overseen bi-annual movements of accreted sand since 1995. Defs.' Ex. 10, Ex. A. During that time, the Corps has conducted over sixty inspection visits. Defs.' Ex. 11, Declaration of Dale Dickenson.

Plaintiffs filed an action in the Erie Court of Common Pleas in 1996, at No. 60018–1996, seeking damages for their property loss. By Order dated September 22, 1997, that court concluded that construction of the Marina had taken property from the petitioners such as to constitute a *de facto* condemnation and a Board of Viewers was appointed to determine the amount of damages. Defs.' Ex. 18, Docket Sheet.

Following a conference of counsel, this case was closed on February 4, 1997.

A few months later, on September 27, 1997, plaintiffs filed a Motion to Reopen Case and to Schedule a Hearing. The case was reassigned to Judge Sean J. McLaughlin. Judge McLaughlin recused in December, and the case was returned to our docket. We granted plaintiffs' Motion to Reopen, and held a status conference on August 18, 1998. Following the conference, a hearing on plaintiffs' motion for injunctive relief was scheduled for September 14, 1998.

Prior to that hearing, the parties reached an agreement to avoid protracted litigation and entered into a stipulation

---

4. Count II of the complaint contained allegations against the Department of Environmental Resources. Count II was subsequently dismissed by Order dated September 28, 1993.

dated September 14, 1998 ("the Stipulation"). Defs.' Ex. 7. The parties agreed that the Corps of Engineers Waterway Experiment Station ("WES") would submit a study and plan and/or progress report for the restoration of the beaches east of the Marina. Defs.' Ex. 7, ¶ 2. The PFBC agreed to replenish not less than four thousand (4000) cubic yards of material from the west side of the Marina to the east side for the purpose of protecting the beaches. The Stipulation included a time frame for moving the material, and stated that the "Commission will move the same amount of material each spring and fall during their normal bi-annual movements; until completion of the WES Study. Movements are contingent upon lake conditions." Defs.' Ex.7, ¶ 1. There were additional provisions for fees to be paid by the defendants, and the parties agreed that the action in the Court of Common Pleas would be stayed pending completion of the WES study. Defs.' Ex.7, ¶ 6.

On January 12, 1999, we granted plaintiffs' motion for a hearing to show cause why the injunctive relief requested in the complaint should not be granted. During the next two years, hearing dates were set and continued by request of the parties several times.

In accordance with the Stipulation, the Beach Erosion and Sediment Processes Study for North East Marina, Erie County (the "WES Study"), was performed. The report was published in June, 2001. Defs.' Ex. 8.

Plaintiffs remained dissatisfied with the condition of the beaches, and with the Commission's overall compliance with the Permit. At plaintiffs' request we held a status conference on April 3, 2002, and set filing dates for motions for summary judgment.

In May of 2002, amendments were made to the original permit, reflecting the WES Study's findings and recommendations. The current permit is No. 199660874. Defs.' Ex. 12, Declaration of Albert H. Rogalla, Ex. 13. Whereas Special Condition 20 of the original permit required the Commission to bypass all littoral drift material, Special Condition 18 of the new permit incorporated the conclusion of the WES Study that the optimum volume of material that should be bypassed each year is approximately 17,000 cubic yards. Half of the material should be moved in the spring, and half in the fall prior to December 1. The Permit also incorporated the WES recommendation that if less than 17,000 cubic yards of material has accreted on Commission property in any calendar year, only the accreted amount will be moved to the east beaches. The material should be contoured after it is moved. Defs.' Ex. 13 at 4, ¶ 18.

The Permit requires the Commission to continuing monitoring and reporting the accretion of littoral drift material. Defs.' Ex. 13 at 4–5, ¶ 19. The Commission is directed to "take additional steps as directed by the District Commander to ensure that your project does not have an unacceptable adverse impact on the littoral drift system." Defs.' Ex. 13 at 5–6, ¶ 22.

Also in May of 2002, plaintiffs filed a Motion to Enforce the Stipulation, and asking the Court to require the defendants to move additional material immediately and again in the fall of 2002. In July, we granted that motion insofar as the relief requested for the remainder of 2002. We ordered the defendants to move an additional 4500 cubic yards of material to the plaintiffs' properties within 3 weeks of our Order, and to move another 8500 cubic yards during November. Defendants then moved for reconsideration and requested a hearing. Defendants also filed motions for summary judgment.

We granted defendants' motion for reconsideration, and on August 13, 2002, held

a hearing on the remaining issues in this case. Plaintiffs were represented at the hearing by Mark O. Prenatt, Esquire. The PFBC was represented by Senior Deputy Attorney General Thomas F. Halloran, and the Corps was represented by Assistant U.S. Attorney Paul E. Skirtich. Defendant Commission presented the testimony of Tim Truitt, current manager of the Marina; Sam Concilla, Commissioner for the Northeast District for the PFBC; and Jim Young, Director, PFBC Bureau of Engineers. Defendant Corps presented the testimony of Corps of Engineers' geologist Andrew Morang, co-author of the WES Study, and Albert Rogalla, Chief of the Corps' Regulatory Branch. The plaintiffs presented no testimony.

Following the hearing, we granted defendants' Motion for Reconsideration, and vacated our Order of July 25, 2002. We agreed that it would be inopportune to require the movement of any material before the fall, and we directed that material be moved in the fall of 2002, prior to December 1, as required by ¶ 18 of the Permit. Defendants' motions for summary judgment were taken under advisement.

### Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Childers v. Joseph*, 842 F.2d 689 (3d Cir.1988). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the initial burden

of establishing an absence of evidence to support an element of the non-moving party's claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and come forward with affirmative evidence, by affidavit or other information in the factual record, to show that a genuine issue of material fact remains for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Williams v. West Chester*, 891 F.2d 458, 460–61 (3d Cir.1989).

A "genuine issue" is one in which the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under the applicable rule of substantive law. *Id.* A court considering summary judgment must examine the entire record in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Id.* at 255, 106 S.Ct. 2505. However, Rule 56 "does not permit a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Insurance Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982).

### Analysis

The defendants argue that the relief plaintiffs seek cannot be granted, that there is no dispute as to any material fact, and that they are entitled to judgment as a matter of law.

### Relief sought

Count I of plaintiffs' complaint demands that the Corps revoke the Permit and order the removal of the Marina, seeks injunctive relief, and asks that the Court require the Corps to order the Commission to comply with the Permit. Count II demands injunctive relief against the Com-

mission for allowing the Marina to be constructed on its property. In Count IV, plaintiffs seek injunctive relief, and ask that the Court require the Permit holder to bypass all littoral drift material west of the west breakwall to the east side of the Marina, in order to replenish any depletion.

Much has happened since the complaint and amended complaint were filed in 1993. At this juncture, plaintiffs' frame the relief they seek as "requesting this Court to require the Corps of Engineers to follow the terms and conditions of the Stipulation and the WES Study." Pls.' Br. at 14. They are not seeking removal of the Marina. Pls.' Br. at 15. Rather, plaintiffs ask that we grant mandamus relief to compel the Corps to restore the beaches "to the same condition they would have been in had the Marina not been constructed." Pls.' Br. at 14.

At the outset, we must reject plaintiffs' argument that we should require the Corps to continue to follow the terms of the Stipulation. Assuming but not deciding that we would have jurisdiction to order this action, by its very terms the Stipulation was an interim measure that required the Commission to move material only "until completion of the WES Study." Defs.' Ex. 7 at 5, ¶ 1. We agree with the defendants that since the WES Study was completed in June of 2001 the Stipulation is no longer in effect, and we will not order compliance with that agreement. The Permit, which now incorporates the conclusions of the WES Study, remains in place and is our focus here.

Plaintiffs' remaining claims, then, essentially demand that we order the Corps to enforce the Permit in certain ways, or that we find that the Corps' actions in this case constitute an abuse of its discretion. We turn first to the question which, if any, of the Corps' decisions in managing the Permit are subject to judicial review.

### Review of discretionary agency decisions

Defendants maintain that the plaintiffs are not entitled to mandamus relief because the Corps has the discretion to make decisions regarding enforcement of the Permit, and these decisions are not subject to judicial review.

■ The mandamus relief plaintiffs seek under 28 U.S.C. § 1361 is available only if the plaintiff "has exhausted all other avenues of relief and only if the defendant owes him a clear, nondiscretionary duty." *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Therefore, to be entitled to mandamus relief, the plaintiffs must establish that the Corps owes them a non-discretionary duty.

■ It has long been established that federal courts do not have mandamus jurisdiction "to direct the exercise of judgment or discretion in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either." *Wilbur v. United States, ex rel. Kadrie,* 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930).

Limited review of agency actions, however, may be available under the Administrative Procedures Act ("APA"). 5 U.S.C. § 551 *et seq.* The statute provides for judicial review as follows:

§ 701. Application; definitions

(a) This chapter [5 U.S.C. §§ 701 *et seq.*] applies to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning

or applicability of the terms of an agency action. The reviewing court shall—

    (1) compel agency action unlawfully withheld or unreasonably delayed; and

    (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

        (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

5 U.S.C. §§ 701, 706.

As a general rule, agency decisions are reviewable under the APA to assess whether the actions were arbitrary, capricious, or an abuse of discretion. *Heckler v. Chaney,* 470 U.S. 821, 826, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 139–141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). However, the Supreme Court has clearly held that this presumption is reversed where an agency has decided **not** to act. In *Heckler v. Chaney,* the Supreme Court considered whether a decision by the Food and Drug Administration to exercise its discretion not to undertake certain enforcement actions, could be reviewed under § 701(a)(2) of the APA, and concluded that "an agency's decision not to take enforcement action should be presumed immune from judicial review" under the APA. *Chaney,* 470 U.S. at 832, 105 S.Ct. 1649. The Supreme Court reasoned that such decisions are generally unsuitable for judicial review, in part because "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." *Id.* at 831, 105 S.Ct. 1649. Furthermore, "[t]he agency is far better

equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.*

■ We begin, therefore, with the principle that any failure to enforce the Permit is presumptively non-reviewable. However, this presumption of unreviewability "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 833, 105 S.Ct. 1649. *Chaney* directs us to the applicable statute to see if Congress has provided guidelines for the Corps to follow, or has left enforcement to the Corps' discretion. There are two statutory bases for the Corps' authority to grant permits such as those at issue in this case: Section 10 of the Rivers and Harbors Act of 1899 ("RHA"), 33 U.S.C. § 403 (1982), and Section 404 of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1344 (1982). The Boll plaintiffs can rebut the presumption that decisions not to enforce are not reviewable only by showing that the RHA or the FWPCA provide guidelines for the Corps to follow in making its enforcement decisions. If the statutes provide no guidance, then Congress has left these decisions to the agency's discretion.

■ The plaintiffs have failed to indicate what guidelines Congress has provided in either statute that would rebut the presumption of nonreviewability and allow us to review the agency's purported failure to enforce the Permit.

We are not surprised that the plaintiffs have failed to meet their burden on this issue, as nothing in the language of either statute appears to support the plaintiffs' position.[5] Indeed, the Court of Appeals

---

**5.** We are aware that Judge Mencer, at an earlier moment in this case, denied motions to dismiss on the theory that the Clean Water Act did provide such guidance. See Memorandum Opinion of Judge Mencer dated November 2, 1993, Defs.' Ex. 3. However, Judge

Mencer's decision did not address *Harmon Cove,* which we regard as the controlling law of this Circuit on this very issue and which we read as contradicting this part of his opinion. Furthermore, Judge Mencer painstakingly

for the Third Circuit has clearly held that neither the RHA nor the FWPCA restrict the Corps' discretion to enforce its permits. *Harmon Cove v. Marsh*, 815 F.2d 949, 954 (3d Cir.1987). In *Harmon Cove*, a condominium association brought an action to compel the Corps of Engineers to enforce a permit the Corps had issued to developers. The issue before the court was if the Corps' decision whether to enforce a permit under the RHA or the FWPCA was a discretionary decision and therefore beyond judicial review. The court held that neither the RHA nor the FWPCA contained guidelines for the Corps to follow in choosing to initiate enforcement activity, or that limited the Corps' discretion to enforce compliance with the terms of the permit. *Id.* at 952–53. The Court of Appeals concluded that the Corps had the discretion to make enforcement decisions, that these decisions were beyond judicial review, and that the plaintiffs were not entitled to mandamus relief on their claims.

Plaintiffs attempt to distinguish *Harmon Cove*. They assert that this decision leaves open the possibility that a court may order mandamus relief to compel the Corps to enforce a permit, where the Corps has already found that a permit holder is in violation of a condition of the permit. *See Harmon Cove*, 815 F.2d at 953, n. 5. Under these circumstances, plaintiffs contend, mandamus relief would be available to compel the Corps to order compliance with the terms of the Permit. They point out that the Corps found the first permit-holder, Safe Harbor, to be in violation of the terms of the Permit, and argue that the Commission assumed these violations when the Permit was transferred. However, given the Third Circuit's broader finding that the statutes lack guidelines binding the Corps' enforcement decisions, we must reject this argument and find that such determinations are left to the agency's discretion. *Id.* at 953.

Furthermore, assuming that the Commission took on Safe Harbor's violations when the Permit was transferred, the facts of this case show that it has made numerous efforts to remedy those violations and has complied with Permit. PFBC's long-range compliance plan was submitted to the Corps and accepted in September, 1992. Defs.' Ex. 13. The plan provided for bi-annual bypassing, under the terms of the Permit. Jim Young, Director of the Bureau of Engineering for the Commission, testified that the Commission was required to maintain and replenish material, and detailed both dates and amounts of material moved since the Fall of 1993. Hearing Ex. 1. Responsibility for compliance with the Permit was taken over by

linked his decision to the liberal standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6), and to the facts alleged in the plaintiffs' complaint. At that time, the court reasoned that the Corps had found Safe Harbor to be in violation of the permit, and had suspended the permit due to non-compliance. Opinion at 7. Injunctive relief remained an open issue. *Id.* at 8. (Injunctive relief was denied on November 12, 1993.) Safe Harbor had encountered difficulties moving sand as required by the Permit, and the Permit had recently been transferred to the PFBC. At this stage of the case, considering defendants' motions for summary judgment, we have the benefit of evidence not then before the Court,

and are confident that neither statute provides for our review. Although the parties have not asserted that Judge Mencer's opinion is the law of this case and cannot be disturbed, we note that it is well established that this doctrine does not restrict a court's power but governs the exercise of its discretion. *Southco, Inc. v. Kanebridge Corp.*, 324 F.3d 190 (3d Cir.2003) (citing *In re City of Philadelphia Litig.*, 158 F.3d 711, 717–18 (3d Cir.1998)). Nor does the law of the case doctrine prohibit courts from revisiting "matters that are avowedly preliminary or tentative." *Id.* at 194 (quoting *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir.1999)).

the Corps' Pittsburgh Division in 1995, and the Corps has overseen bi-annual movements of accreted sand since then. Defs.' Ex. 10, Ex. A. During that time, the record shows that the Corps has conducted over sixty inspection visits. Defs.' Ex. 11, Declaration of Dale Dickenson. Tim Truitt, current manager of the Marina, testified that the delay in moving material in the spring of 2001 was caused by the need to accommodate visits by the Board of Viewers from the state court action. In addition, the Corps has never found the present permit-holder, the Commission, to be in violation of the Permit.

We find that the plaintiffs have not met their burden on this issue, and can point to nothing in either the RHA or the FWPCA that would allow us to review the Corps' handling of the Permit in this matter or to compel the agency to take certain actions. Under the teaching of *Harmon Cove,* we find that we lack subject matter jurisdiction over plaintiffs' claims that the Corps should have enforced the Permit or that we should compel the Corps to take any action.

**Abuse of discretion under the APA**

Agency decisions that are not discretionary, as well as those where the presumption of unreviewability has been rebutted, may be reviewed under the APA. Section 706 permits a court to set aside agency action found to be arbitrary and capricious or an abuse of discretion. 5 U.S.C. § 706(2)(A). Defendants argue that even if some of the challenged activity was not discretionary, there is no evidence that the Corps has abused its discretion.

Plaintiffs assert that the Corps has abused its discretion in several respects, beginning with the lack of enforcement regarding the permit violations early in the case. Pls.' Br. at 15. For the reasons articulated above, we find that we cannot review a decision not to enforce. Nor will we review plaintiffs' contention that the

Corps abused its discretion by not requiring the Commission to move all littoral drift from the western side of the Marina. Pls.' Br. at 13. This, too, invites us to compel the Corps to take specific actions and is a discretionary issue beyond the scope of our review.

However, to the extent that the plaintiffs contend that the Corps abused its discretion when it issued the original Permit, we find that we have jurisdiction to review that decision. Although the matter has not been decided in this circuit, courts that have considered the issue have concluded that district courts do have jurisdiction under the APA to review the Corps' decision that a permit may issue. *See, e.g., Conservation Law Found. v. Federal Highway Admin.,* 24 F.3d 1465, 1471 (1st Cir.1994); *Holy Cross Wilderness Fund v. Madigan,* 960 F.2d 1515, 1521 (10th Cir. 1992); *Friends of the Earth v. Hintz,* 800 F.2d 822, 831 (9th Cir.1986); *Sierra Club v. United States Army Corps of Eng'rs,* 772 F.2d 1043, 1050 (2d Cir.1985); *Sierra Club v. Pena,* 915 F.Supp. 1381, 1392 (N.D.Ohio 1996) (distinguishing between the decision to *deny* a permit, which is unreviewable, and the decision to *grant* a permit, which is not). The Corps of Engineers' granting of a permit is final agency action for purposes of judicial review. *Salt Pond Associates v. United States Army Corps of Eng'rs,* 815 F.Supp. 766, 773 (D.Del.1993). Review here is the plaintiffs only avenue of relief for this claim.

Review of an agency decision under an abuse of discretion or arbitrary and capricious standard is extremely limited. As the Supreme Court stated in *Citizens to Preserve Overton Park v. Volpe,* "[t]o make this finding the court must consider whether the decision 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment ... the ultimate standard of re-

view is a narrow one. The court is not empowered to substitute its judgment for that of the agency.'" 401 U.S. 402, 415–416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Accordingly, we may only review whether the Permit was issued after the Corps considered the appropriate factors, and whether the decision to issue the permit was a clear error of judgment.

Defendants argue that summary judgment is appropriate because the Corps followed the proper procedures when granting the Permit, and neither acted arbitrarily and capriciously nor abused its discretion.

The National Environmental Policy Act ("NEPA"), requires that federal actions that might significantly affect the environment be preceded by an assessment of that impact. 42 U.S.C. § 4331 *et seq.* NEPA establishes the Counsel on Environmental Quality ("CEQ"), which has set forth the procedural regulations governing this assessment. Under these regulations, federal agencies may make a preliminary Environmental Assessment to determine whether the environmental effects of a proposed action will be significant. 40 C.F.R. 1508.9 (1986). This assessment should briefly discuss the relevant issues, and either conclude that a more detailed Environmental Impact Statement ("EIS") should be prepared, or make a "Finding of No Significant Impact." 40 C.F.R. 1508.13 (1986).

■ Our review of this issue is very limited. "[O]nce an agency has made a decision subject to NEPA's procedural requirements, the only role for a court is to insure that the agency has considered the environmental consequences." *Strycker's Bay Neighborhood Council Inc. v. Karlen,* 444 U.S. 223, 227–228, 100 S.Ct. 497, 62 L.Ed.2d 433 (1980). With regard to whether an agency's decision was arbitrary and capricious, we "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Resources Counsel,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989).

■ Under the applicable regulations, before letting the permit to Safe Harbor the Corps was required to make a preliminary Environmental Assessment to determine whether the environmental effects of the proposed Marina would be significant. The record shows that the Corps properly complied with these procedures and conducted an Environmental Assessment for the Safe Harbor Marina in May of 1990. Defs.' Ex. 15. The assessment evaluated all relevant factors. Since the Corps concluded that there would be no significant environmental impact, a further Environmental Impact Statement was not required. Defs.' Ex. 15 at 16. Although the plaintiffs dispute this conclusion at length, they do not allege that the Corps failed to follow the proper procedures. Having determined that the Corps considered the relevant factors we may not reevaluate the agency's decision or substitute our judgment for its findings. *Overton Park,* 401 U.S. at 415–416, 91 S.Ct. 814. The Corps' determination of no significant impact was reached after a thorough evaluation of the relevant factors; accordingly, the decision to issue the Permit to Safe Harbor was not arbitrary and capricious, and the Corps did not abuse its discretion in doing so.

The plaintiffs further argue that the Corps abused its discretion when it modified the Permit, and insist that the Corps is not permitted to arbitrarily modify the original permit. Pls.' Br. at 16,18. They provide no authority for this latter assertion. Indeed, since the Corps has the discretion to issue and enforce permits, it is reasonable to conclude that it also has the authority to issue a new or modified permit as circumstances require. In this

case, those circumstances were the results of the WES Study, which the parties agreed should be performed. That the WES Study failed to address each of plaintiffs' concerns and did not resolve some issues as the plaintiffs believe they should have been resolved, has no bearing on the Corps' discretion to issue a new Permit incorporating the study's findings. We conclude that the decision to issue a new Permit was not arbitrary and capricious, and was not an abuse of the Corps' discretion.

More broadly, plaintiffs take issue with the WES Study itself, and argue that although the Stipulation charged WES with submitting a plan that included the method to restore, and fully replenish and maintain the beaches each year, the Study fails to do so. Pls.' Br. at 13. The content of the WES Study is beyond our purview, as are any discretionary decisions the Corps subsequently made based upon that report.

### Conclusion

It is undisputed that the construction of the Marina has had a negative impact on the plaintiffs' beaches. They have not, however, presented any claims for which we may grant a remedy. We lack jurisdiction to consider plaintiffs' arguments that we should require the Corps of Engineers to enforce the Permit in any fashion. We have jurisdiction only to consider plaintiff's claim that the Corps abused its discretion in letting or modifying the Permit, and we hold that the Corps' action was not arbitrary and capricious and that it did not abuse its discretion.

Finally, although the complaint and amended complaint include equitable claims, plaintiffs' response to the motions for summary judgment does not address them, and we do not understand plaintiffs' remaining claims to be seeking this relief. However, to the extent that the reopening of this case may be seen as reinstating a demand for injunctive relief, said relief is hereby denied. As there are no disputed issues of material fact summary judgment shall be entered in favor of both defendants and against the plaintiff, and the mandamus relief plaintiffs seek will be denied.

Plaintiffs have successfully pursued a condemnation action in the Court of Common Pleas of Erie County, and will be financially compensated for their losses. The Marina will continue to operate under the Permit, which obligates the Commission to move material twice a year to temporarily restore the beaches and compensate for the litoral drift, and requires regular oversight and inspection by the Corps of Engineers.

We have closed this action once before, and reopened it upon plaintiffs' motion when the circumstances warranted. Having now disposed of all remaining claims, we will once again direct that the case be closed.

An appropriate Order follows.

### ORDER

AND NOW, to-wit, this __ day of April, 2003, for the reasons set forth in the accompanying Opinion, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

The motion for summary judgment filed by defendant Colonel John W. Morris, District Commander, United States Army Corps of Engineers, Buffalo, New York District (Doc. 80) be and hereby is GRANTED;

The motion for summary judgment filed by defendant Pennsylvania Fish and Boat Commission (Doc. 75) be and hereby is GRANTED;

Having now disposed of all claims in this action, the Clerk of Court be and hereby is directed to mark this case as "closed."